# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
# Judge Christine M. Arguello

Civil Action No. 19-cv-02966-CMA

BRENDAN SCOTT,

    Plaintiff,

v.

ANDREW SAUL, Commissioner of Social Security,

    Defendant.

## ORDER AFFIRMING DENIAL OF DISABILITY INSURANCE BENEFITS

This matter is before the Court on review of the Social Security Commissioner's decision denying Plaintiff Brendan Scott's application for disability insurance benefits.[1] For the following reasons, the Court affirms the denial of benefits.

## I.     BACKGROUND

### A.     PROCEDURAL HISTORY

On March 25, 2015, Plaintiff, Brendan Scott, applied for disability insurance benefits. Plaintiff alleged disability beginning September 30, 2014, when he was involved in a car accident. His application was denied initially on September 27, 2015.

---

[1] Mr. Scott is proceeding *pro se* in this case. Therefore, the Court construes his filings liberally, but may not act as his advocate. *Alford v. Comm'r, SSA*, 767 F. App'x 662, 664 (10th Cir. 2019) (citing *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005)). That means that the Court "cannot take on the responsibility of serving as [Mr. Scott's] attorney in constructing arguments and searching the record." *Crampton v. Comm'r, SSA*, 778 F. App'x 574, 577 (10th Cir. 2019) (quoting *Garrett*, 425 F.3d at 840).

Plaintiff filed a written request for hearing on December 29, 2015, and Plaintiff appeared at a hearing before an administrative law judge ("ALJ") on September 21, 2017. (Doc. # 16-2 at 49–99.) Shortly thereafter, the ALJ issued a written decision finding Plaintiff was not disabled under the Act. *See generally* (*id.* at 20–31). The ALJ's decision became the agency's final decision when the Appeals Council denied review. Plaintiff timely sought judicial review from this Court.

**B.    RELEVANT EVIDENCE BEFORE THE ALJ**

On September 30, 2014, Plaintiff went to the Lutheran Medical Center Emergency Department reporting neck pain following a low-speed car accident. (Doc. # 16-8 at 323.) Plaintiff denied any weakness in his arms or legs. On examination, Plaintiff's low back was mildly tender, and his neck had a slightly decreased range of motion. (*Id.* at 324–25.) Plaintiff was diagnosed with an acute cervical strain and a lumbar strain. (*Id.* at 326.)

From October 2014 through March 2015, Plaintiff saw a chiropractor, Shad Sutton, D.C., at Wellness on Washington. *See* (Doc. # 16-9 at 361–407). On October 20, 2014, Shad Sutton opined that Plaintiff could return to work duties on October 27, 2014, without restrictions. (*Id.* at 349.) On November 3, 2014, he opined that Plaintiff could return to work with the following restrictions: no pushing, pulling, or lifting in excess of 10 pounds. (*Id.* at 351.)

Also in November 2014, Plaintiff began treatment at SpineOne for neck, mid-back, and low-back pain. (Doc. # 16-11 at 474.) He reported his pain was a 7 out of 10. On examination, he had an unremarkable gait, full strength in all extremities, and no

muscle atrophy; he did experience discomfort with range of motion of his neck and low back. (*Id.* at 475.) Frederic Sonstein, M.D., ordered MRIs, which showed disc bulges and one disc protrusion in the cervical spine (put differently, the neck) and disc bulges in the lumbar spine (the low back). (Doc. # 16-10 at 468.) Plaintiff had an epidural steroid injection and a medial branch block in his low back, which provided good, albeit temporary, relief from pain. Plaintiff also had a radiofrequency ablation, which provided little relief from pain, leading Plaintiff to report his pain was a 6 out of 10. (*Id.* at 442.) Plaintiff nevertheless had full strength in all extremities and an unremarkable gait. (*Id.* at 454.) Plaintiff ceased treatment at SpineOne in 2015. (*Id.* at 437–54). Dr. Sonstein purportedly completed a disability form for Plaintiff in May 2015, but such a form is not in the administrative record. (*Id.* at 439.) Dr. Sonstein referred Plaintiff to a neurosurgeon, but there is no evidence that Plaintiff ever saw one. (*Id.* at 438.)

In June 2015, Plaintiff began treatment at Colorado Pain, where he received care until August 2017. *See* (Doc. # 16-13 at 674); (Doc. ## 16-15–16-21 at 737–1356). Plaintiff received pain medications, medial branch blocks, radiofrequency ablations, and epidural steroid injections. In March 2017, Plaintiff requested that Colorado Pain complete disability paperwork on his behalf. He reported that neck pain was his primary pain, but that he also had low-back pain. His provider noted that "[h]e has responded well to procedures including cervical thoracic and lumbar MBBs and RFAs CESIs and SI injections[,]" that his "[c]urrent medications [were] helpful" and did not cause side effects, and that his activities of daily living and quality of life were improved by medications and intervention. (Doc. # 16-19 at 1192.) Plaintiff reported to his provider

3

that he could not return to work as a door-to-door salesman due to limitations caused by his pain. (*Id.*)

That day, Ryan Doggett, a physician assistant at Colorado Pain, completed a form opinion stating that Plaintiff could sit 0.5 hours per day, stand and walk 20 minutes per day, and lift nothing, and could not twist, bend, or stoop. (Doc. # 16-21 at 1360.) Mr. Doggett's opinion did not include a narrative explanation of said limitations. After Mr. Doggett completed his opinion, Plaintiff reported that his "[activities of daily living] and [quality of life were] helped tremendously by medications and procedures." *See, e.g.*, (*id.* at 1340). Care providers at Colorado Pain repeatedly noted that Plaintiff had a normal gait and full strength in all extremities, but tenderness on palpation to his spine and some muscle spasms. *See, e.g.*, (Doc. # 16-15 at 817–18); (Doc. # 16-16 at 842, 866); (Doc. # 16-17 at 942, 967–68, 1106); (Doc. # 16-19 at 1155, 1196); (Doc. # 16-21 at 1297, 1344).

In November 2015, Plaintiff was examined by Ronald Jendry, M.D., as part of his disability application. (Doc. # 16-14 at 699.) Plaintiff reported neck, upper-back, and low-back pain that was a 7 or 8 out of 10. On examination, Plaintiff sat comfortably, was not uncomfortable getting on or off the examination table, and was able to stand up without discomfort. (*Id.* at 701.) Plaintiff had discomfort and reduced range of motion in his neck and some discomfort with range of motion of his low back, but he had full (5/5) strength and no weakness or atrophy in his extremities. (*Id.* at 702–04.) Dr. Jendry opined that Plaintiff could sit without limitation; could stand and walk occasionally (one-third of the day); could lift 10 pounds easily and 30 pounds occasionally; was limited to

4

occasional bending, stooping, squatting, crouching, and crawling; and would be assisted by a cane. (*Id.* at 705.)

**C.     ADMINISTRATIVE HEARING AND ALJ DECISION**

Plaintiff, represented by an attorney, testified at the September 2017 hearing. (Doc. # 16-2 at 50.) He testified that he could sit comfortably for 10 or 15 minutes at a time, stand for less than 10 minutes at a time, and walk less than a city block. (*Id.* at 56.) He further testified that he had difficulty lifting 10 pounds. (*Id.* at 60–61.)

In her written decision, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability and that he had the following severe impairments: degenerative disc disease of the cervical and lumbar spine, obesity, diabetes mellitus, thoracic spondylosis, and hypertension. (*Id.* at 22.) However, the ALJ concluded that Plaintiff's impairments did not meet every criterion of a *per se* disabling impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). (*Id.* at 22–24.) Then, between steps three and four, the ALJ assessed that Plaintiff has the residual functional capacity to perform a reduced range of light work as defined in 20 C.F.R. 404.1567(b). (*Id.* at 24–25.) Given this residual functional capacity, the ALJ found Plaintiff capable of returning to his past relevant work as a sales representative and cannery worker and, therefore, not disabled under the Act. (*Id.* at 30.)

## II.     LEGAL STANDARDS

When reviewing the Commissioner's decision, the Court is limited to determining "whether the findings are supported by substantial evidence and whether the Secretary applied the correct legal standards." *Pacheco v. Sullivan*, 931 F.2d 695, 696 (10th Cir.

5

1991); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). The Supreme Court has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 217 (1938). "Substantial evidence is more than a scintilla, but less than a preponderance . . . ." *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987).

In reviewing the record to make the substantial evidence determination, the Court "may not reweigh the evidence nor substitute [its] judgment for the Secretary's." *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994). In addition, the Court "may not displace the agency's choice between two fairly conflicting views, even though the [C]ourt would justifiably have made a different choice had the matter been before it de novo." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quotation marks and citation omitted). Also, the Court "defer[s] to the ALJ on matters involving the credibility of witnesses." *Glass*, 43 F.3d at 1395. "A finding of no substantial evidence will [occur] only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)) (quotation marks omitted).

In addition to the absence of substantial supporting evidence, "[f]ailure to apply the correct legal standard or to provide [the reviewing court] with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984); *see also Thompson v. Sullivan*,

987 F.2d 1482, 1487 (10th Cir. 1993). "There are specific rules of law that must be followed in deciding whether evidence is substantial in these disability cases." *Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir. 1987).

However, not every error in evaluating evidence or applying the correct legal standard warrants reversal or remand. "Courts may not reverse and remand for failure to comply with a regulation without first considering whether the error was harmless." *Bornette v. Barnhart*, 466 F. Supp. 2d 811, 816 (E.D. Tex. 2006); *see also Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (recognizing that the Tenth Circuit has "specifically applied [the principle of harmless error] in social security disability cases" and collecting cases). The standard for harmless error requires a finding that, considering the evidence before the ALJ, the Court can "confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Allen*, 357 F.3d at 1145; *see also Armijo v. Astrue*, 385 F. App'x 789, 792 (10th Cir. 2010); *Lynn P. v. Berryhill*, No. 17-CV-212-JFJ, 2018 WL 3142937, *3 (N.D. Okla. June 27, 2018). Where the reviewing court "can follow the [ALJ's] reasoning in conducting [its] review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012).

### III. **DISCUSSION**

Construing his filings liberally, Plaintiff raises the following arguments on appeal: (1) the ALJ erred in concluding that Plaintiff's spine-related impairments did not meet Listing 1.04; and (2) the ALJ's decision was not supported by substantial evidence

7

because the ALJ improperly discounted the opinions of Plaintiff's doctors and care providers, including Patrick Doggett, and improperly discounted Plaintiff's subjective reports concerning the limiting effects of his impairments. *See generally* (Doc. # 23). Plaintiff also moves the Court to consider new evidence that was not before the ALJ. (Doc. # 20.) The Court first considers Plaintiff's arguments on appeal before turning to his request to submit new evidence.

A.  **WHETHER THE ALJ ERRED IN CONCLUDING THAT PLAINTIFF'S IMPAIRMENTS DO NOT MEET A LISTING**

The Listings "define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing any gainful activity, not just 'substantial gainful activity.'" *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) (citing 20 C.F.R. § 404.1525). "[T]he listings were designed to operate as a presumption of disability that makes further inquiry unnecessary." *Id.* "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria." *Id.* at 530 (emphasis in original). The claimant must demonstrate that all of the criteria are present at the same time for a period of at least one year. *See Davidson v. Colvin*, 596 F. App'x 675, 678 (10th Cir. 2014) (unpublished) (listing cannot be met if criteria are intermittently satisfied).

To meet Listing 1.04, the listing for disorders of the spine, a claimant must show compromise of the spinal cord with, as relevant here, evidence of nerve root compression characterized by (1) neuro-anatomic distribution of pain, (2) limitation of motion of the spine, (3) motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss, and, (4) if there is involvement of the

8

lower back, positive straight-leg raising test (sitting and supine). 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04(A).

Plaintiff broadly disputes the ALJ's finding that his impairments did not meet the listing. *See* (Doc. # 23 at 8 ("I do meet the criteria of [the Listings].")). However, the ALJ's finding that Plaintiff did not meet Listing 1.04 is supported by substantial evidence. Listing 1.04 requires Plaintiff to show, in relevant part, muscle weakness. Examination notes from SpineOne, Colorado Pain, and Dr. Jendry all demonstrated that Plaintiff had normal strength in his upper and lower extremities. *See, e.g.*, (Doc. ## 16-10–16-11 at 454, 475); (Doc. ## 16-15–16-21 at 817–18, 842, 866, 942, 967–68, 1106, 1155, 1196, 1297, 1344); (Doc. # 16-14 at 703–04). Therefore, the ALJ's determination that Plaintiff did not satisfy all of the specified medical criteria for Listing 1.04A for a period of 12 consecutive months is supported by substantial evidence.[2]

To the extent that Plaintiff argues the ALJ disregarded his diagnosis of cervical radiculopathy, any such error is not reversible. The harmless error standard requires a finding that "no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Allen*, 357 F.3d at 1145. "[F]ailure to find a particular impairment severe at step two is not reversible error when the ALJ finds

---

[2] Plaintiff seems to argue that the ALJ dismissed his MRIs from 2014 and 2016 in reaching her decision. (Doc. # 23 at 8.) Yet, the ALJ thoroughly discussed the findings of MRIs from November 2014 and March 2016. (Doc. # 16-2 at 26–27.) She then properly noted that the MRI findings "may account for the claimant's back pain[,]" but "the mere presence of abnormalities does not, in and of itself, equate to any specific functional limitation, nor does it necessarily indicate the frequency or severity of symptoms caused by the abnormalities. Therefore, these objective findings are only partially consistent with the claimant's allegations of pain." (*Id.* at 27.) The ALJ then went on to discuss the other evidence in the record and the extent to which that evidence was consistent with Plaintiff's allegations of pain. The Court finds no error in the ALJ's consideration of Plaintiff's MRIs.

that at least one other impairment is severe." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016); *see Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) (concluding any error committed by considering the claimant's impairments individually, as opposed to collectively, became harmless when the ALJ proceeded to the next step of the evaluation sequence). In this case, the ALJ found at step two that Plaintiff's severe impairments included degenerative disc disease of the cervical and lumbar spine. She then proceeded to the next step of the evaluation process and considered Plaintiff's neck impairments and corresponding limitations in assessing his residual functional capacity. Thus, the ALJ's omission of cervical radiculopathy from the list of Plaintiff's severe impairments was not reversible error.

**B.    WHETHER THE ALJ'S DECISION IS SUPPORTED BY SUBSTANTIAL EVIDENCE**

Plaintiff argues that the ALJ erred in discounting certain opinions and his subjective complaints concerning the limiting effects of his impairments. (Doc. # 23 at 7–9.) The Court agrees with the Commissioner that the ALJ provided good reasons, supported by substantial evidence, for discounting both forms of evidence.

    1.    <u>ALJ Treatment of Opinion Evidence</u>

        a.    *Ryan Doggett*

Plaintiff argues that the ALJ erred by discounting the opinion of Ryan Doggett. As a physician assistant, Mr. Doggett is not an acceptable medical source under Social Security regulations.[3] In the case of an opinion from a non-medical source, "the ALJ's

---

[3] Plaintiff argues that the ALJ erred in discounting Mr. Doggett's opinion because "it is legal for Patrick Doggett to fill in and sign the form as he is working under Dr. Krutsch." (Doc. # 23 at 9).

10

decision is sufficient if it permits [the reviewing court] to 'follow the adjudicator's reasoning.'" *Keyes-Zachary*, 695 F.3d at 1164 (quoting SSR 06-3p, 2006 WL 2329939, at *6)). The ALJ's decision is sufficient to permit this Court to follow her reasoning with respect to Mr. Doggett's opinion.

The ALJ reasonably concluded that Mr. Doggett's opinion was inconsistent with the record as a whole, including Plaintiff's subjective reports, examination findings, and activities of daily living. *See* 20 C.F.R. §404.1527(c)(4) (requiring an ALJ to consider whether an opinion is consistent with the record as a whole). Mr. Doggett's form opinion stated that Plaintiff could sit 30 minutes per day, stand and walk 20 minutes per day, and lift nothing. (Doc. # 16-21 at 1360.) The ALJ noted that Mr. Doggett's opinion expressed more extreme limitations than Plaintiff's subjective reports; for example, Mr. Doggett's opinion that Plaintiff could never lift any weight was inconsistent with Plaintiff's testimony that he could lift 10 pounds with some difficulty. (Doc. # 16-2 at 60.) The ALJ further found that Mr. Doggett's opinion that Plaintiff had significant limitations in sitting, standing, and lifting was more extreme than the examination findings in the record, which routinely reflected normal strength in Plaintiff's extremities and a normal gait. *See, e.g.*, (Doc. ## 16-10–16-11 at 454, 475); (Doc. ## 16-14–16-21 at 703–04, 817–18, 842, 866, 942, 967–68, 1006, 1155, 1196, 1297, 1344). Finally, the ALJ found Mr. Doggett's opinion that Plaintiff could stand and walk 20 minutes and sit 30 minutes total per day was inconsistent with Plaintiff's activities of daily living, including that Plaintiff

---

In so arguing, Plaintiff fundamentally misunderstands that the Social Security regulations differentiate between opinions by medical and non-medical sources.

11

regularly drove, cooked, and shopped. (Doc. # 16-14 at 701.) Accordingly, the ALJ reasonably discounted Mr. Doggett's opinion as inconsistent with the record as a whole. *See Pisciotta v. Astrue*, 500 F.3d 1074, 1078–79 (10th Cir. 2007) (concluding ALJ reasonably discounted opinion that was inconsistent, in part, with reports by the claimant and his mother); *see also Simmons v. Colvin*, 635 F. App'x 512, 515 (10th Cir. 2015) (unpublished) (concluding ALJ reasonably discounted one source's form opinion because the included impairment ratings "were far more extreme than his own treatment notes would suggest."); *see also Newbold v. Colvin*, 718 F.3d 1257, 1266 (10th Cir. 2013) (concluding ALJ reasonably discounted treating physician's opinion that the claimant had extreme limitations because it was inconsistent with the claimant's daily activities).

    b.    Amy Crockett

Plaintiff also appears to argue that the ALJ improperly discounted the opinion of Amy Crockett, Ph.D., who examined Plaintiff in 2015 and diagnosed him with post-traumatic stress disorder and adjustment disorder.[4] Dr. Crockett opined that Plaintiff had an average ability to understand, remember, and carry out simple instructions, but his persistence and concentration were markedly impaired. (Doc. # 16-13 at 688–89.) The ALJ noted that "[t]he opinion was rendered after a single examination of [Plaintiff]" and

---

[4] Plaintiff objects to the ALJ's treatment of "Amy Crochet [sic] and John Hendley [] dismissing all of the diagnosis and medical opinions to the point that [t]he ALJ's hold [sic] them in contempt . . . ." (Doc. # 23 at 8.) However, Plaintiff provides no record citation for an opinion by John Hendley, and neither the Commissioner nor this Court has located such an opinion in the administrative record. Therefore, the Court will not address this argument. *See Crampton*, 778 F. App'x at 577 (explaining the reviewing court is not responsible for constructing arguments or searching the record on behalf of a *pro se* plaintiff).

determined that the opinion was inconsistent with Plaintiff's normal mental status exam findings, activities of daily living, and minimal treatment for mental impairments since the alleged onset of disability. (Doc. # 16-2 at 29.) Therefore, the ALJ's decision to assign Dr. Crockett's opinion little weight was supported by substantial evidence. *See, e.g.*, *Walters v. Colvin*, 604 F. App'x 643, 648 (10th Cir. 2015) (affirming denial of benefits where "[t]he ALJ noted that [claimant] did not receive treatment for depression and anxiety, and . . . stated he was not interested in mental-health treatment and his current medication was working fine."); *Dixon v. Colvin*, 556 F. App'x 681, 683 (10th Cir. 2014) (concluding ALJ decision to assign little weight to medical opinion was supported by substantial evidence where opinion that claimant suffered from "extreme limitations" was in tension with her limited mental health treatment, which included therapy once or twice a month).

2. ALJ Treatment of Plaintiff's Subjective Reports

An ALJ must consider a claimant's subjective complaints in determining whether the claimant is disabled. 20 C.F.R. § 404.1529. If a claimant has medically determinable impairments—i.e., an objectively verified impairment—that could cause a claimant's symptoms, then the ALJ determines to what extent the claimant's symptoms are consistent with the objective medical evidence and other evidence. 20 C.F.R. § 404.1529(a)-(b); SSR 16-3p, 2017 WL 5180304. 20 C.F.R. § 404.1529 sets forth certain factors the ALJ should consider in weighing a claimant's subjective reports.[5] However,

---

[5] These factors include:
    (i) the claimant's daily activities;

Tenth Circuit precedent "'does not require a formalistic factor-by-factor recitation of the evidence . . . [s]o long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility.'" *See Poppa v. Astrue*, 569 F.3d 1167, 1171 (10th Cir. 2009) (quoting *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000)). "Credibility determinations are peculiarly the province of the finder of fact, and [the reviewing court] will not upset such determinations when supported by substantial evidence." *Diaz v. Secretary of Health & Human Servs.,* 898 F.2d 774, 777 (10th Cir. 1990).

In this case, the ALJ set forth the specific evidence she relied on to discount Plaintiff's subjective reports, and her decision to do so is supported by substantial evidence. The ALJ found that Plaintiff's medically determinable impairments could cause his symptoms, but that his statements about their limiting effects were inconsistent with the objective medical evidence, Plaintiff's activities of daily living, and Plaintiff's response to treatment. (Doc. # 16-2 at 26); *see* 20 C.F.R. § 404.1529(c)(3) (explaining ALJ will consider consistency between subjective complaints and objective medical evidence, as well as claimant's daily activities and effectiveness of medication and/or treatment).

---

(ii) the location, duration, frequency, and intensity of the claimant's pain or other symptoms;
(iii) precipitating and aggravating factors;
(iv) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate his or her pain or other symptoms;
(v) treatment, other than medication, the claimant receives or has received for relief of his or her pain or other symptoms;
(vi) any measures the claimant uses or has used to relieve his or her pain or other symptoms; and
(vii) other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms.

First, the ALJ found that Plaintiff's self-reported, significant limitations in sitting, standing, walking, and lifting were undermined by examination findings that showed that he had normal strength and gait. *See, e.g.*, (Doc. ## 16-10–16-11 at 454, 475); (Doc. ## 16-14–16-21 at 703–04, 817–18, 842, 866, 942, 967–68, 1006, 1155, 1196, 1297, 1344). Second, the ALJ found that Plaintiff's subjective complaints were inconsistent with his daily activities, including that Plaintiff drove, cooked, shopped, cleaned for himself, and took his three children to school and appointments. (Doc. # 16-2 at 28); (Doc. # 16-14 at 701). Finally, the ALJ found that Plaintiff's subjective complaints of debilitating pain and symptoms were inconsistent with evidence of his positive response to treatment. (Doc. # 16-2 at 27.) For example, Plaintiff reported that his activities of daily living and quality of life "are helped tremendously by medications and procedures[.]" (Doc. ## 16-19–16-21 at 1258, 1293, 1340.) His pain-management provider noted in 2017 that Plaintiff "responded well" to certain procedures, his "[c]urrent medications [were] helpful[,]" and his activities of daily living and quality of life were improved. (Doc. # 16-19 at 1192.)

The ALJ's decision to discount Plaintiff's subjective complaints was, therefore, based on a thorough review of the record and supported by substantial evidence. *See, e.g.*, *Megginson v. Astrue*, 489 F. App'x 260, 263 (10th Cir. 2012) (concluding that the ALJ's review of the medical records supported an adverse credibility finding where "[t]he fact that clinical examinations routinely showed a normal gait and full (5/5) muscle strength, grip strength, and range of motion in his right arm undermined [the claimant's] allegations"); *Lykins v. Colvin*, 657 F. App'x 726, 729 (10th Cir. 2016) (unpublished)

(affirming the ALJ's discounting of claimant's subjective complaints, which were inconsistent with daily activities).[6]

## C. PLAINTIFF'S MOTION TO PRESENT NEW EVIDENCE

Plaintiff has also filed a 46-page Follow Up Motion to Present New Evidence (Doc. # 20), wherein he submits a combination of argument and medical records and moves the Court to consider evidence that was not before the ALJ. Plaintiff's request to submit new evidence is denied for failure to demonstrate good cause.

A reviewing court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). "Good cause" is more than a desire to relitigate the same issues. *Bradley v. Califano*, 573 F.2d 28, 30 (10th Cir. 1978). Indeed, "[r]emand will not be ordered where it appears that the claimant seeks nothing more than the opportunity to produce additional and cumulative medical evidence which amounts only to a relitigation of the medical issues." *Bradley v. Califano*, 573 F.2d 28, 31 (10th Cir. 1978). Otherwise, "there would be no end to litigation before the administrative boards and the courts." *Id.* (quoting *Moore v. Celebrezze*, 252 F.Supp. 593, 595 (E.D.Pa. 1966), aff'd 376 F.2d 850 (3d Cir. 1967)).

---

[6] Plaintiff also objects to the ALJ's "summary of [his] appearance[.]" (Doc. # 23 at 8.) However, the ALJ noted that Plaintiff had appropriate behavior, dress, and appearance in evaluating whether Plaintiff's claimed mental impairments were severe. (Doc. # 16-2 at 24.) Plaintiff has not appealed the ALJ's determination that his claimed mental impairments were not severe, so this objection is irrelevant. Nevertheless, the Court finds that the ALJ's consideration of Plaintiff's presentation was proper because "maintaining personal hygiene and attire appropriate to a work setting" is relevant to determining whether a mental impairment is severe. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(E)(4); 20 C.F.R. § 404.1520a(c)(2).

Plaintiff asserts that good cause is satisfied in this case because his attorney failed to present relevant medical records to the ALJ, unbeknownst to Plaintiff. However, Plaintiff's counsel's failure to submit certain documents for the ALJ's consideration is not grounds for remand under Section 405(g). *See Taylor v. Comm'r of Soc. Sec.*, 43 F. App'x 941, 943 (6th Cir. 2002) ("there is absolutely no statutory or decisional authority for . . . [the] unstated premise that the alleged incompetence of [the claimant's] first attorney constitutes 'good cause'"); *cf., e.g.*, *Jones v. Colvin*, 647 F. App'x 878, 884 (10th Cir. 2016) (affirming denial of remand where claimant and counsel failed to submit certain records on the mistaken belief that the ALJ would give greater weight to certain evidence); *Wilson v. Astrue*, 602 F.3d 1136, 1149–50 (10th Cir. 2010) ("Allowing a claimant to hold opinion evidence as to her limitations to present to the district court in the first instance would seriously undermine the regularity of the agency process and is not allowed."); *Miller v. Barnhart*, 194 F. App'x 519, 522 (10th Cir. 2006) (affirming district court's denial of remand for lack of good cause where attorney failed to submit new evidence prior to the Appeals Council's decision); *Hite v. Saul*, 457 F. Supp. 3d 1175, 1185 (D.N.M. 2020) (concluding claimant's proposed "new lawyer with a different litigation strategy" basis for remand constituted a "second-bite-at-the-apple" and was not good cause). Indeed,

> when the claimant is represented by counsel at the administrative hearing, the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored. Thus, in a counseled case, the ALJ may ordinarily require counsel to identify the issue or issues requiring further development.

*Hawkins v. Chater*, 113 F.3d 1162, 1167–68 (10th Cir. 1997) (citing *Glass v. Shalala,* 43

F.3d 1392, 1394–96 (10th Cir. 1994) (refusing to remand for further development of the record where the ALJ had carefully explored the applicant's claims and counsel failed to specify the additional information sought)). Plaintiff's prior counsel's alleged failure to submit certain records to the ALJ may form the basis of a cause of action against counsel, but it does not constitute good cause for remand in this case.

Nor does the Court find that the proffered new evidence is material. "In order to find a remand appropriate, [the reviewing court] normally must determine that the new evidence would have changed the [Commissioner's] decision had it been before [her]." *Hargis v. Sullivan,* 945 F.2d 1482, 1493 (10th Cir. 1991). "Implicit in this requirement is that the proffered evidence relate to the time period for which the benefits were denied." *Id.* To the extent Plaintiff has submitted records that post-date his application for benefits—e.g., an "updated MRI and report [from] March 2020"—those records are irrelevant to the instant proceedings. If Plaintiff's previously nondisabling condition has deteriorated since his first application for benefits, "the appropriate remedy [is for Plaintiff] to initiate a new claim for benefits as of the date that the condition aggravated to the point of constituting a disabling impairment." *Rhodes v. Barnhart*, 117 F. App'x 622, 625–26 (10th Cir. 2004) (quoting *Sizemore v. Sec'y of Health & Human Servs.,* 865 F.2d 709, 712 (6th Cir. 1988)).

Further, Plaintiff has not demonstrated that the records that predate his application for benefits would have changed the ALJ's decision. For example, the ALJ discussed the findings of various MRIs of Plaintiff's lumbar and cervical spine in her decision, including a November 2014 MRI and a March 2016 MRI. Plaintiff submits

18

additional MRIs and radiologist reports dated 2014 and 2016 for the Court's consideration but fails to show that his proffered evidence "is not merely cumulative of what is already in the record." *Heimerman v. Chater*, 939 F. Supp. 832, 834 (D. Kan. 1996).

Accordingly, Plaintiff's Motion to Present New Evidence is denied.

### IV. CONCLUSION

For the foregoing reasons, it is ORDERED that the ALJ's denial of disability benefits is AFFIRMED. It is

FURTHER ORDERED that Plaintiff's Follow Up Motion to Present New Evidence (Doc. # 20) is DENIED. The Clerk of Court is directed to close this case.

DATED: May 28, 2021

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge